CENTRAL EUREKA, Plaintiff and Appellant, *v.* LUIS A. FAJARDO CARDONA, Defendant and Appellee.

No. 5422. Argued November 25, 1932.—Decided July 29, 1933.

*Oscar Souffront* for appellant. *Nazario & García Méndez* for appellee.

Mr. Justice Córdova Dávila delivered the opinion of the Court.

The Central Eureka, lessee of a rural property of seventy-nine acres (*cuerdas*) described in the complaint, alleges that the defendant and appellee is the owner of an adjoining property which is also described in the complaint; that said defendant and appellee in his capacity as vice-president of the Central Eureka and as field supervisor of said Central, had under his care and supervision the cultivation and exploitation, for the use and benefit of the lessee Central Eureka, of the rural property leased by the plaintiff from its owner, Tomás Quiñones y Guzmán, for a period of twelve years, and that said defendant cultivated jointly both tracts of land, the one that belonged to him and the one rented by the plaintiff Central, and that said defendant was in charge of the administration and care of all the lands owned by the Central Eureka as well as of those held by it under contracts of lease, until March 15, 1919; that by virtue of a private contract dated March 15, 1919, entered into between

the defendant and the plaintiff, represented by its president, Mateo Fajardo Cardona, the plaintiff herein entrusted to the defendant the administration and cultivation, among others, of the rural property leased from Tomás Quiñones, so that he might cultivate it and administer it for his own account; and that this contract was made extensive to the present grinding season (*zafra*) and to all others that might occur during the years 1920 to 1926; that by oral agreement between the plaintiff Central, acting through its president, Mateo Fajardo Cardona, and the defendant Luis A. Fajardo, the aforesaid contract was terminated during the early part of January, 1920, when it was rescinded by mutual agreement of the parties, at which time the Central Eureka again took charge of all its agricultural properties (*campos*) including the one that had been leased from Tomás Quiñones y Guzmán as already stated; that when the defendant delivered to the plaintiff the latter property on the first days of the month of January, 1920, he changed the boundary on the eastern side of said property, setting up as such boundary a lane (*callejón*) which said defendant had opened during the years that he acted as field supervisor of the Central Eureka prior to March 15, 1919, and that the plaintiff can not determine the exact date on which said lane was opened by the defendant; that this lane was laid within the property leased by the plaintiff, at an approximate distance of 32 meters from the plaintiff and that therefore the defendant appropriated to his own use a strip of land measuring 6.19 acres (*cuerdas*) which he segregated from the principal tract leased by the plaintiff, and thereby ousted the plaintiff corporation from said parcel of land, well knowing that the same formed a part of the rural property owned by Tomás Quiñones y Guzmán; that from July 1, 1912, to January, 1920, the Central Eureka was in possession of the whole of that property, including the above-mentioned strip of land from which it was ousted by the defendant and that it has since paid the taxes and the rent, and that the defendant-appellee, in

appropriating to himself the strip of land of 6.19 acres has done so unlawfully and without any title or right therein, by taking advantage of the fiduciary position that the defendant enjoyed as president of the Central Eureka and field supervisor up to March, 1919; that at the termination of the 1920 harvest, Mateo Fajardo Cardona, then president of the plaintiff Central, became aware of the change of boundary made by the defendant, whose attention was called thereto, and as he refused to restore the said strip of land, the plaintiff caused a survey to be made of the principal property, and ascertained that really the western boundary thereof had been altered and that the Central Eureka had been ousted from a strip of land belonging to it which was in the possession of the defendant Luis A. Fajardo; that since that time until 1926 the Central Eureka repeatedly demanded from the defendant the restoration to it of that parcel of land but without any success; that in 1926 the defendant agreed with the plaintiff Central that both parcels should be measured, that is, the rural property belonging to the Estate of Tomás Quiñones y Guzmán and the other property owned by the defendant, who undertook to restore to the former tract any land that may be lacking therefrom, provided that such deficiency appeared from any survey to be made, and that when said survey was made by the surveyor Tomás Boucher, it was found that the parcel belonging to Tomás Quiñones y Guzmán, taking as a basis the boundary line as fixed by the defendant, measured at that time only 73.54 acres and that the parcel owned by the defendant, on the same basis had an area of 95.08 acres, including the strip of land in controversy, without the defendant being entitled to any area greater than 79.73 acres similarly as in the case of Tomás Quiñones y Guzmán, for both parcels had formed part of a larger tract which had been divided into precisely equal portions as a result of the partition proceedings had in the settlement of the estate of his Excellency Carlos M. Fajardo, the former owner of the entire original tract; that as the

defendant was not satisfied with the survey and plats made by the surveyor Tomás Boucher, he requested the surveyor Antonio Freyre to verify, jointly with the surveyor Tomás Boucher, said survey, which they did, and Mr. Freyre confirmed the correctness of the measurements taken by Mr. Boucher as shown by the plats made by the latter; and that notwithstanding this confirmation by the surveyor Freyre of the survey previously made, the defendant Luis A. Fajardo, in violation of the agreement entered into, then arbitrarily refused and still refuses to surrender to the Central Eureka the possession of said strip of land measuring 6.19 acres.

On the above facts the plaintiff prayed for a judgment directing the defendant, Luis A. Fajardo, to restore to it the parcel of land of 6.19 acres described in the complaint. As a second cause of action claim was made for the recovery of rents and profits estimated at $6,190.

The defendant demurred to the complaint on the grounds that neither the first nor the second count thereof states facts sufficient to constitute a cause of action against the defendant, and further that the first cause of action has prescribed in accordance with subdivision 1, section 1868, of the Civil Code of Puerto Rico, and that the second cause of action has also prescribed, under the second subdivision of the said section.

The lower court sustained those grounds of demurrer, and as it thought that the complaint could not be amended, it entered judgment dismissing the action, with costs against the plaintiff.

The appellant corporation maintains that the lower court erred in holding that the first cause of action is barred according to the first subdivision of section 1868 of the Civil Code of Puerto Rico.

The plaintiff argues that in the instant case the action to recover the possession is not based on the mere occupancy (*tenencia*) of the property, but on the right that the plaintiff holds in the same as lessee by virtue of a contract of

lease entered into with the owners of the property aforesaid, for a period of twelve years at an annual rental of $1,200 for the first two years and of $1,600 for the balance of the term.

The plaintiff seeks to establish a distinction between the mere holding of a thing, which does not presuppose title but only the material act of occupation, and the possession acquired under a contract of lease, and asserts that the former is subject to the limitation period fixed by section 1868 of the Civil Code, while the latter is not. The plaintiff adds that the action brought is founded upon section 1463 (sec. 1450, 1930 ed.) of the Civil Code, for which no specific period of prescription is fixed, and hence resort must be had to the legal provisions regulating generally the prescription of real actions.

Emphasis is laid on the fact that the contract of lease entered into between the plaintiff and Tomás Quiñones is recordable in the registry of property. We fail to see the importance that this fact may have, as regards a claim for the recovery of possession. The law does not make any distinction. In both instances the lessee has a direct action against the trespasser who has not acted by virtue of a right belonging to him.

Section 1450 of the Civil Code, 1930 edition, which according to the plaintiff forms the basis of this action, provides that the lessor is not obliged to answer for the mere fact of the trespass made by a third person in the use of the estate leased, but the lessee shall have a direct action against the trespasser. The fact of trespass does not exist if the third person, whether it be the government or a private person, has acted by virtue of a right belonging to him. In order to determine what the legislature meant when it used the words ''mere fact of trespass,'' we must construe this section jointly with the preceding section 1449. As stated by Scaevola, both sections are correlative provisions and mutually complete each other and show that where the lessee

is disturbed in the enjoyment of the thing, or where a third person claims any interest thereon, the application of one of these sections excludes that of the other. Section 1449 provides that the lessee is obliged to give notice to the owner with the least possible delay of any usurpation or injurious alterations which any other person may have made or is openly preparing to make upon the thing leased. Hence, before any duty on the part of the lessee to notify the lessor can exist, it is necessary that a usurpation or injurious alteration shall have been committed or threatened. An act of mere trespass is not considered as an injurious alteration that prejudices the rights of the lessor, nor has it the character of a usurpation.

In construing sections 1559 and 1560 of the Spanish Civil Code, equivalent to sections 1449 and 1450 of our Civil Code, the commentator Scaevola, at page 560, volume 24 of his Commentaries on the Civil Code, says:

"*Disturbance in law and disturbance in fact:* The basis for the application of either section must be established in the light of the true meaning of the phrases 'usurpation or injurious alteration' and 'an act of mere trespass' respectively used in sections 1559 and 1560. They appear to correspond to the expressions 'disturbance in law' and 'disturbance in fact,' used by certain text writers and foreign statutes to differentiate the invasions of the thing leased for which the lessor and lessee must respectively answer.

"After examining those sources of information we find in none of them language as inadequate as that used in our section 1559 to characterize the disturbance for which the lessor is answerable. To say 'usurpation or injurious alteration', especially in contrasting this concept with that of 'an act of mere trespass,' is to say nothing or to say exactly the opposite of what we mean. Apparently, the legislator shielded himself behind the literal precedent established by the Project of 1851, and abandoned his duty in the presence of the numerous problems that arise in practice by reason of concepts so vague and obscurely conceived.

"Fortunately, there are good reasons to assert that the first of these sections which we are discussing, refers to actual or attempted usurpations on the part of a third person, based on a claim of title more or less efficacious. Those reasons flow from the contrast which,

as we have stated, must be established between the two precepts under consideration, and from the most useful explanatory addition made to the second of the said sections, definitely providing that there is no trespass if the third person has acted by virtue of a right belonging to him.

"Therefore, if section 1559 by implication provides that the lessee has no direct action against the person who has made the usurpation or injurious alteration, which only oblige him to notify the lessor, and section 1560 authorizes the lessee only to meet or repel an act of mere trespass, the phrase contrasted with the latter, although also in a too general way, is the 'disturbance in law.'

"We have already said, that the words 'usurpation or injurious alteration' suggest to us the opposite of what section 1559 meant to provide. Really, 'usurpation' presupposes something like an unlawful deprivation; the act of seizing what does not belong to us.

"*      *      *      *      *      *      *

"The Chilean Code (section 1931) provides that the action by third persons *who claim a right in the thing leased,* shall be directed against the lessor, and it shall be the duty of the lessee to notify him of any disturbance of molestation by said third persons, *in consequence of any rights they may claim;* and the preceding section (1930) refers to cases where the lessee is disturbed in the enjoyment of the premises by third persons not based on any claim of right in the thing leased, and authorizes him to sue in his own name for the recovery of the damages.

"To a like effect are the corresponding sections of the French and Italian Codes and of other codes similarly worded.

"Moreover, in the Spanish Civil Code itself, the legislator had a precedent and a model fully available as a standard for the adoption of another formula offering less difficulty for interpretation than the one embodied in section 1559. Section 511, dealing with usufructs, provides that the usufructuary is obliged to notify the owner of any act of a third person, of which he may have knowledge, *which may be prejudicial to the rights of the owner,* and shall be liable, should he fail to do so, for any damages resulting as if caused by his own fault. In view of the analogy existing between a lease and a usufruct, and the evident similarity of the principles on which sections 511 and 1559 are respectively based, the use of the same treatment was in order.

"In short, in the absence of any reason for deviating from the standard fixed by the precepts above cited, it is evident that sections 1559 and 1560 are correlative provisions and mutually complete

each other, and show that where the lessee is disturbed in the enjoyment of the thing, or where a third person claims any interest therein, the application of one of these sections excludes that of the other.

''If the third person, in good faith and under a claim of title more or less efficacious, performs or attempts to perform an act, prejudicial to the ownership or to any incidental rights of ownership in the thing leased, it is incumbent on the owner to defend against the attack. If said third person, without any reason other than his arbitrariness or bad faith or even criminal intent at times, disturbs the possession of the lessee and arbitrarily seeks to seize what he knows does not belong to him, the said lessee may bring an action against him personally, oppose the adverse claim or in any other lawful way prevent him from carrying out any acts of deprivation.''

Although the complaint in this case has been intelligently and carefully drafted and the plaintiff makes efforts to show that its action is based on section 1450 of the Civil Code, nevertheless, the allegations themselves indicate that the controversy involves more than a mere question of fact.

The plaintiff avers that the defendant has taken possession of the strip of land illegally, without any title or right, appropriating it and incorporating it into his property, well knowing that it did not belong to him. To appropriate means to take a thing to one's self as owner. Therefore, the ownership rights of the lessor in this strip of land are being attacked. The plaintiff itself points out in its brief that this suit is in the nature of an action of revendication, although it exerts efforts to show that we are dealing with an act of mere trespass on which the plaintiff has a direct action. It is also stated in the complaint that the parties agreed to measure the two principal properties, and that the defendant promised to return any excess land held by the defendant that might be lacking from the Quiñones' property. The stipulated survey agreed was made and the defendant, who was not satisfied with it nor with the plats made, appointed a surveyor who verified the correctness of the survey previously made by surveyor Tomás Boucher. Notwithstanding this, the defendant refused to deliver the parcel claimed by the plaintiff.

These allegations show that surveys and maps have been made and that the parties are not in accord. The defendant, as we have seen from the complaint, promised to deliver any excess of land held by him. Although it is alleged that the survey showed an excess, the truth is that the defendant continues to detain the parcel of land in question. In this respect Manresa, at page 523, volume 10 of his Commentaries on the Civil Code, states:

"If the disturbance is extrajudicial, we think that the special character of the facts must be considered in order to make a determination. The act of changing the landmarks or monuments of a property, when separately considered, must be regarded as an act of mere trespass; but if said act has been preceded by demands, negotiations wherein reason and grounds have been alleged for the change, and maps, ancient titles, etc., have been produced, we are of the opinion that the actual disturbance involves a question of law that only the lessor can raise. And if so, what would be the use of the lessee seeking, say, an interdict when the lessor would have to intervene in the suit?

"On the other hand, if the disturbance is not preceded by something that reveals a purely *juridical* intention on the part of the trespasser, to such an extent that the lessee only faces the material act devoid of any claim or assertion of right, we are of opinon that an act of mere trespass would be involved.

"It is always possible that what appears as a mere act of trespass may turn out to be based on a solid legal ground that can be alleged successfully before the courts; but that would not appear on first impression to the lessee. The person who is in position to know about this is the lessor, to whom notice of the invasion must be given in accordance with section 1559; but if notwithstanding this notice he does nothing in consequence thereof, we do not think that the lessee should consider the disturbance other than as an act of mere trespass, and he should seek redress against it as such.

"From the foregoing comments it may be inferred that there is some divergence between our viewpoint and that of the Code; but delving into the spirit of the provision we think that said divergence is merely apparent. In the second paragraph of the section under consideration, the Code mentions as a condition the fact that the third person *has acted* by virtue of a right belonging to him; in our comments we have emphasized the circumstance that the third person

may *have thought* that he was acting by virtue of a right. Really, a belief on the part of the trespasser is not equivalent to the actual existence of his right. But the second paragraph of section 1560 does not directly define disturbances in law, nor does it define by exclusion, the disturbances in fact; it merely states that the latter do not exist where the third person acts by virtue of a right belonging to him; and this does not contradict what we have said, for it is clear that where a third person acts by virtue of a right belonging to him, the belief we have mentioned will also be present. In short, the second paragraph of section 1560 does not set out a complete concept but merely presents *one of the cases* where it must be understood that a disturbance in fact (*perturbación de hecho*) does not exist.''

It should be noted that section 1450 of the Civil Code, 1930 ed., speaks only of an act of mere trespass committed by a third person affecting the use of the leased property. Such use consists in the enjoyment of all the benefits incidental to possession. The use or enjoyment authorizes the lessee not only to use but to dispose of, and exercise acts of ownership over, the fruits naturally produced by the estate, or created by the industry of the occupant. The lessee needs this material possession in order to use and enjoy the property. In the instant case we are not dealing with acts done within the property leased that merely disturb the plaintiff in the use thereof. The defendant has not confined himself to a disturbance of the plaintiff's use of the realty, without impairing his possession, but he has gone further, depriving him of said possession and consequently of the fruits thereof. The lessee can not assume a better position than the owner. If the property in question had been in the possession of its legitimate owner, he would be precluded from recovering the possession through a possessory action. It is manifestly clear that the lessee is not entitled to exercise rights which are denied to the owner of the property in question. It is alleged as an excuse that the proceeding is in the nature of an action of revendication. It is precisely for this reason that the lessee is precluded from exercising it.

The legitimate owner is the one that should establish any rights of ownership that he may have in the property wrongfully detained, and it is not incumbent on the lessee to proceed against the trespassers where those rights are in dispute.

The case of *Heirs of Arrarás* v. *Figueroa et al.*, 29 P.R.R. 813, cited by the plaintiff, is not applicable to the fundamental issue presented in the instant case. In the case cited, the plaintiffs allege that they were co-owners of the property claimed. There is no doubt that the legitimate owner of a property has the right to revendicate it. In the case at bar the action is exercised by the lessee. If, as stated by the plaintiff, this proceeding is in the nature of an action of revendication, it should have been brought by the owner, and not by the lessee. The possessory action herein, whether brought by the owner or by the plaintiff, is barred because the period fixed by law for the exercise thereof had already expired at the time the complaint was filed.

We do not deny that a lessee can claim the possession of the property leased through the proper action, but if he wants to exercise his rights he must do so within the period prescribed by law.

The rents and profits produced by the property are claimed, as a second cause of action, in the complaint. The lessee, in our opinion, is not entitled to recover on such claim. If the defendant has any right to the property in question, the lessee can not compel him to pay for the rents and profits. After the lapse of the term prescribed for bringing the possessory action one must resort to the corresponding action in order to secure the restoration of the property. It is not incumbent on the lessee to litigate in respect to the title of the estate. His duty is to seek redress from the lessor in the exercise of the rigths granted to him by law.

The judgment appealed from should be affirmed.